# 26-2730

## United States Court of Appeals

*for the*

## Second Circuit

In Re: UNITED STATES OF AMERICA,

*Petitioner*.

UNITED STATES OF AMERICA,

*Petitioner*,

– v. –

RANJIT GUPTA, CYRIL CABANES, SAURABH AGARWAL,
DEEPAK MALHOTRA, RUPESH AGARWAL,

*Respondents.*

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

**BRIEF FOR *AMICUS CURIAE* HONORABLE
NICHOLAS G. GARAUFIS IN OPPOSITION TO PETITION**

DEIRDRE VON DORNUM
SHER TREMONTE LLP
*Attorneys for Amicus Curiae*
90 Broad Street
New York, New York 10004
(212) 202-2600

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (398001)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 3

A. The Indictment ........ 4

B. The Government Moves to Dismiss All Counts with Prejudice as to All Eight Defendants, but Provides No Substantive Basis for Its Motion. ........ 6

C. The District Court Directs the Government to State Its Bases for Seeking Dismissal. ........ 6

D. The Government Provides Facially Contradictory Reasons and Volunteers "Non-Considerations" That Raise Concerns of Improper Inducement. ........ 7

E. The District Court Seeks Information About the Defendants' Promise to Invest Money in the United States. ........ 10

F. Defendant Adani and His Counsel Respond to the District Court's July 8 Order, Contradicting Previous Statements and Raising Additional Concerns About the Investment Promise. ........ 11

G. In Response to the July 15 Submissions, the District Court Requests Additional Information. ........ 12

H. Adani's Counsel and USA Nocella Provide the Information Directed by the July 15 Order. ........ 13

I. The District Court Dismisses Counts Two, Three and Four and Requests Further Information About the Proffered Reasons for Dismissing Counts One and Five. ........ 14

J. The Government Refuses to Provide Additional Information and Imposes a Deadline on the Court. ........ 16

K. Based on the Government's Refusal to Provide Additional Information, the District Court Denies Dismissal of the Remaining Two Counts, but Continues to Urge the Government to Provide Information. ........................18

ARGUMENT ........................................................................................19

I. LEGAL STANDARD ..........................................................................19

A. The Writ of Mandamus. ....................................................................19

B. Federal Rule of Criminal Procedure 48(a) .........................................19

C. District Court's Supervisory Power .....................................................21

II. A WRIT OF MANDAMUS DOES NOT ISSUE BASED ON THE GOVERNMENT'S IMPATIENCE OR IRRITATION. ....................................22

A. The District Court Has Not Foreclosed the Relief Sought in the Petition; Far From It. ..........................................................................22

B. Rule 48(a)'s Leave of Court Provision Clearly Contemplates a Court's Ability to Raise Questions About the Public Interest. ..................................24

C. Permitting the District Court to Finish Deciding the Rule 48(a) Motion Will Cause No Prejudice. ..........................................................................29

III. WHERE THE GOVERNMENT OFFERS FACIALLY INCONSISTENT AND CONTRADICTED REASONS, THE COURT HAS THE AUTHORITY AND DUTY TO REQUEST FURTHER INFORMATION UNDER RULE 48(a) AND ITS INHERENT POWERS. .................................30

CONCLUSION ....................................................................................34

CERTIFICATE OF COMPLIANCE ...........................................................35

CERTIFICATE OF SERVICE ..................................................................36

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Application of Cohn*,
416 F.2d 440 (2d Cir. 1969) ........ 23

*Bankers Life & Cas. Co. v. Holland*,
346 U.S. 379 (1953) ........ 19

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ........ 30

*Cheney v. U.S. Dist. Court for D.C.*,
542 U.S. 367 (2004) ........ 19, 22

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ........ 18, 32

*Eash v. Riggins Trucking Inc.*,
757 F.2d 557 (3d Cir. 1985) ........ 30

*Ex parte Rowland*,
104 U.S. 604 (1881) ........ 24

*In re Flynn*,
973 F.3d 74 (D.C. Cir. 2020) ........ 23

*In re Richards*,
213 F.3d 773 (3d Cir. 2000) ........ *passim*

*In re United States*,
345 F.3d 450 (7th Cir. 2003) ........ 26

*In re United States*,
945 F.3d 616 (2d Cir. 2019) ........ 19, 22

*Kerr v. U.S. Dist. Court*,
426 U.S. 394 (1976) ........ 22

*McNabb v. United States*,
318 U.S. 332 (1943) ........ 21

*Olmstead v. United States*,
277 U.S. 438 (1928)......21

*Parr v. United States*,
351 U.S. 513 (1956)......29

*Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund*,
214 F.3d 132 (2d Cir. 2000)...... 22, 23

*Platt v. Minn. Mining & Mfg. Co.*,
376 U.S. 240 (1964)......19

*Rinaldi v. United States*,
434 U.S. 22 (1977)...... 20, 21, 24, 25

*United States v. Adams*,
777 F. Supp. 3d 185 (S.D.N.Y. 2025)...... 13, 20, 27

*United States v. Ammidown*,
497 F.2d 615 (D.C. Cir. 1973)...... 26, 30

*United States v. Blaszczak*,
56 F.4th 230 (2d Cir. 2022)......20

*United States v. Derr*,
726 F.2d 617 (10th Cir. 1984)...... 25, 31

*United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*,
228 F. Supp. 483 (S.D.N.Y. 1964)...... 20-21, 27, 31

*United States v. Hayden*,
860 F.2d 1483 (9th Cir. 1988)......31

*United States v. Hearn*,
Case No. 2026 CF2 10237 (D.C. Sup. Court) (filed July 31, 2026)...... 28, 29

*United States v. HSBC Bank USA, N.A.*,
863 F.3d 125 (2d Cir. 2017)......21

*United States v. Johnson*,
221 F.3d 83 (2d Cir. 2000)......22

*United States v. Payner*,
447 U.S. 727 (1980) ... 21

*United States v. Salinas*,
693 F.2d 348 (5th Cir. 1982) ... 25

*United States v. Smith*,
55 F.3d 157 (4th Cir. 1995) ... 20, 31

*United States v. Stanchich*,
550 F.2d 1294 (2d Cir. 1977) ... 30

*Yukos Cap. S.A.R.L. v. Feldman*,
977 F.3d 216 (2d Cir. 2020) ... 30

**Statutes, Rules, and Constitutional Provisions**

Fed. R. Crim. P. 48 ... *passim*

**Other Authorities**

3B Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* (4th ed. April 2026 update) ... 20

Memorandum for Head of the Criminal Division from the Deputy Attorney General on Guidelines for Investigations and Enforcement of the Foreign Corrupt Practices Act (FCPA) (June 9, 2025) ... 5

Amicus Curiae Judge Nicholas G. Garaufis respectfully submits this brief in response to the petition for writ of mandamus (the "Petition" or "Pet.") filed by the United States of America (the "Government").

## PRELIMINARY STATEMENT

The Petition raises two related questions:

First, where the Government presents a district court with contradictory and contradicted statements in support of its request for dismissal, does a district court's continued request for additional information pursuant to Federal Rule of Criminal Procedure 48(a) constitute a final order from which the Government has no means for relief other than a writ of mandamus.

Second, assuming *arguendo* that mandamus review is appropriate at this stage, does the Government have a clear and indisputable right to preclude a district court from requiring additional information where the Government's reasons for a Rule 48(a) dismissal are contradictory and contradicted.

This Court need resolve only the first question. The Order below, which followed an earlier order granting in significant part the Government's motion for dismissal, denied the motion as to Counts One and Five *without prejudice* and "continue[d] to encourage" the Government to submit "sufficient factual support for its proffered reasons for dismissal" as to the remaining Counts. The District Court flagged specific inconsistencies raised by the Government's own prior

filings that it sought to clarify before granting leave of court. The District Court did *not* direct the Government to prosecute this case, *nor* did it demand privileged information about internal deliberations.

Mandamus is inappropriate where, as here, the District Court's work is unfinished. The Government's desire for hastier resolution and fewer questions does not warrant mandamus, particularly on an incomplete record replete with statements contradicted by the Indictment or other record evidence about which the District Court was obligated to inquire.

The second question directly implicates the scope of Rule 48(a)'s "leave of court" provision, as well as the District Court's inherent supervisory power. As the District Court recognized, the Government has wide latitude to dismiss indictments. But the "leave of court" requirement squarely places the Court in a reviewing role. The District Court understood its review to be limited and to not encompass second-guessing the appropriateness of the reasons why the Executive sought dismissal, but declined to accept the Government's facially inconsistent and contradicted reasons as to two counts. Far from engaging in "unfounded attacks" on the Department of Justice ("DOJ"), the District Court undertook a thoughtful count-by-count analysis of the Indictment and DOJ's proffered reasons for dismissal that has already resulted in dismissal of most charges.

The Petition effectively asks this Court to rule that, even when the Government presents contradictory and contradicted reasons, the court must rubber stamp the Government's decision without requesting clarifying information, so long as a defendant consents to dismissal. This Circuit has not determined the precise contours of a court's review under Rule 48(a), but the Government's extreme position renders meaningless the "leave of Court" provision. Moreover, it is indisputable that in any context a party's representations to the Court must be reliable and trustworthy, even, or perhaps especially, when that party is the Acting Deputy Attorney General of the United States.

## BACKGROUND

The District Court issued a total of six orders in considering the Government's request for dismissal. The Government's Petition and Addendum includes only three of those orders, notably omitting two in which the District Court described concerns about certain information provided by the Government. The Government's Petition and Addendum also omits the submissions that prompted the District Court's concerns. Accordingly, with permission of this Court, this brief is accompanied by a Supplemental Addendum, which includes the omitted orders and related submissions. This Statement of Background is based

upon all relevant District Court orders and all submissions upon which they were based.[1]

### A. The Indictment

The Government filed a detailed 54-page Indictment containing five counts against eight Defendants on October 24, 2024. Suppl.Add. 1. At the Government's request, on November 20, 2024, the District Court unsealed the Indictment. Dkt. 14. Count One of the Indictment charges five Defendants (Ranjit Gupta, Cyril Cabanes, Deepak Malhotra, and Rupesh and Saurabh Agarwal), each of whom held positions at a renewable-energy company that was a U.S. issuer with registered securities traded on the New York Stock Exchange, with having violated the Foreign Corrupt Practices Act ("FCPA"). Counts Two, Three and Four charge securities fraud and wire fraud against three other Defendants (Gautam and Sagar Adani and Vneet Jain) based on an alleged scheme to pay over $250 million in bribes to Indian government officials to secure solar energy supply contracts, as well as a conspiracy to misrepresent the company's anti-bribery practices to U.S.-based and international investors to raise billions of dollars in financing. Count Five alleges that four of the eight Defendants (Cabanes, Malhotra, and Rupesh and

[1] Documents contained in Petitioner's Addendum, Doc. No. 8.2, are denoted as "Add." Documents contained in Amicus Counsel's Supplemental Addendum are denoted as "Suppl.Add." Filings on the District Court docket are referenced by "Dkt."

Saurabh Agarwal) conspired to obstruct investigations by the Federal Bureau of Investigation ("FBI"), Securities and Exchange Commission ("SEC") and DOJ into the alleged bribery and fraud schemes, including by deleting documents and making false statements to Government officials at meetings in New York.

For 19 months after issuance of the Indictment, no Defendant or defense counsel appeared and the Government requested no action in the case. Arrest warrants were issued immediately after the Indictment was filed (Dkts. 2-9), but there is no indication the Government sought to enforce them. Although then-Deputy Attorney General Todd Blanche issued new guidelines regarding the Government's prosecution of FCPA cases on June 9, 2025 (the "Blanche Memorandum")[2] following Executive Order 14209, which directed that all pending FCPA cases be reviewed by August 10, 2025, the Government took no public action to apply those guidelines to this case until almost one year later, in its July 4, 2026 filing.

---

[2] *See* Memorandum for Head of the Criminal Division from the Deputy Attorney General on Guidelines for Investigations and Enforcement of the Foreign Corrupt Practices Act (FCPA) (June 9, 2025), available at https://justice.gov/dag/media/1403031/dl (establishing four non-exhaustive factors for prosecutors to consider in deciding whether to pursue FCPA charges).

### B. The Government Moves to Dismiss All Counts with Prejudice as to All Eight Defendants, but Provides No Substantive Basis for Its Motion.

On May 18, 2026, the Government moved to dismiss the Indictment with prejudice as to all eight Defendants. The motion set forth the Government's basis for this request in a single sentence: the "Department of Justice has reviewed this case and has decided, in its prosecutorial discretion, not to devote further resources to these criminal charges against individual defendants." Add., Attach. 1 at 1.

Following the Government's motion, counsel for three of the eight Defendants (Gautam and Sagar Adani, and Jain) appeared and submitted *sua sponte* a letter explaining why those Defendants consented to the Government's motion. Suppl.Add. 56. The letter described numerous meetings with DOJ and counsel's submission of hundreds of pages of legal and factual arguments; counsel's views of the legal flaws of Counts Two, Three and Four; and the pending Consent Judgments between the Adanis and the SEC in the related civil enforcement actions, including agreeing to pay $18 million in penalties. *Id.* at 58-59. Counsel's letter did not address Counts One or Five, pending against the other five Defendants.

### C. The District Court Directs the Government to State Its Bases for Seeking Dismissal.

In response to the Government's motion, the District Court issued an Order dated June 26, 2026, which surveyed case law from multiple Circuits, as well as

the Southern District of New York, and noted that Rule 48(a) is a "sunshine provision" requiring the Government, upon a court's request, to supply sufficient reasons for its request for dismissal. Add., Attach. 2 at 3-4 (quoting *In re Richards*, 213 F.3d 773, 788 (3d Cir. 2000)). Accordingly, the Court directed the Government to provide its reasons for dismissing each Count and the factual support for each basis. Add., Attach. 2 at 5.

### D. The Government Provides Facially Contradictory Reasons and Volunteers "Non-Considerations" That Raise Concerns of Improper Inducement.

In response to the June 26 Order, then-Principal Associate Deputy Attorney General Trent McCotter submitted a letter dated July 4, 2026. Add., Attach. 3. Because he "was the … sole decisionmaker to seek dismissal of the charges here," Mr. McCotter noted that he had not asked United States Attorney (USA) Joseph Nocella, Jr., or any other prosecutor, to sign the letter. Add., Attach. 3 at 3 n.1.

Mr. McCotter devoted half of the letter to arguing why the Government should not have to provide *any* information supporting its motion, reasoning that providing information would be unfair to the charged Defendants, expose internal DOJ deliberations, and risk infringing on the Constitution's separation of powers. Add., Attach. 3 at 1-5. Nevertheless, because the District Court had requested an explanation, and because in his view the dismissal request had been pending "for

too long," Mr. McCotter said he was "granting a limited waiver of the relevant privileges to explain why [he] moved to dismiss all charges." Add., Attach. 3 at 5.

Mr. McCotter listed six general reasons for dismissal of all Counts. Although the Letter claimed that the June 26 Order required the Government to disclose privileged information, the proffered reasons appeared to be based upon information in the public record. Those reasons included: "[t]his is a foreign case" involving bribes paid by Indian nationals to other Indian nationals to induce the Indian government to issue contracts for Indian electricity; "India has investigated many of the allegations in this case and … found no actionable misconduct;" no money had been lost on the securities at issue; "[t]he indictment was unsealed in the final days of the prior Administration … as a 'name and shame;'" the case presented proof problems because significant evidence and key witnesses were located in India; and "[t]he defendants have never appeared and probably never would." *Id.* at 6-7.

As to the securities- and wire-fraud charges (Counts Two-Four), Mr. McCotter listed the same legal issues defense counsel had previously provided, including jurisdictional limitations on the securities law, Second Circuit law on corporate "puffery" and the difficulties of proving materiality as to sophisticated investor victims. *Id.* at 7-8; *see also* Suppl.Add. 56-63. As to the FCPA charge, Mr. McCotter contended that the alleged bribery payments did not meet the conditions

described in the "Blanche Memorandum," because, *inter alia*, they do not "implicate[]" "U.S. interests" "in any way," were not "egregious," and already had been the subject of investigations in India. Add., Attach. 3 at 8-9.[3] As to the obstruction of justice charge, Mr. McCotter asserted that it made no sense because it relied on the idea that four of the Defendants had used "expensive" law firms to conduct an internal investigation that implicated the other Defendants. *Id.* at 9.

Mr. McCotter concluded by volunteering what he called "Non-Considerations." *Id.* The Letter referred to press reports, based on leaks by current or former DOJ attorneys, which suggested the Government sought dismissal of the charges because of "some promise by those defendants to invest money in the United States." *Id.* Mr. McCotter said those reports were false. While conceding that the topic of investments might have arisen during negotiations, Mr. McCotter asserted that no "improper resolution"[4] was proposed. *Id.* Instead, he suggested

---

[3] The Government attached to its filing three documents regarding whistleblower complaints in India concerning two of the defendants (Gautam and Sagar Adani) and their companies that raised issues arguably related to the factual allegations in the Indictment but not identical to them. In each, the Indian court or commission stated that no investigation was warranted. Dkt. 37-1 at ¶ 59; Dkt. 37-2 ¶ 25; Dkt. 37-3 ¶ 9. The Government did not include these documents in its Addendum; they are included in Amicus's Supplemental Addendum at 81-112.

[4] The July 4 Letter does not explain "improper resolution," but context suggests Mr. McCotter was referencing a quid pro quo arrangement in which charges would be dropped in exchange for investment. While the Letter suggested that no such offer was proposed during negotiations, as discussed *infra*, later filings contradicted that characterization.

that Defendants might have noted that they had been "effectively frozen out of the United States and its financial system for 18 months because of the pending indictment, and also that they had publicly and expressly indicated a desire to invest in the United States" prior to the Indictment. *Id.* In any event, the Letter stated, while "it would have been entirely fair" for defense counsel to make such an observation, and "such a factor would be entirely fair [for Mr. McCotter] to consider," he had already "firmly concluded" to seek dismissal of the securities charges "even before that topic first arose." *Id.*

### E. The District Court Seeks Information About the Defendants' Promise to Invest Money in the United States.

In response to the July 4 Letter, the District Court promptly entered an order dated July 8, 2026 (omitted from the Government's Addendum). Suppl.Add. 113-16. The July 8 Order focused solely on the "non-considerations" the July 4 Letter had volunteered. *Id.* The District Court noted that the July 4 Letter "raises—for the first time—the specter of a possible agreement … in connection with the dismissal of the Indictment." *Id.* at 114. Neither the Government's motion to dismiss nor counsel's June 24 submission "made [ ] mention of any agreement to abandon this case–let alone an agreement to drop the charges in exchange for a defendant's promise 'to invest money in the United States.'" *Id.* at 115 (quoting Dkt. 37 at 9).

To fulfill its obligations under Rule 48(a) and to "satisfy itself that no agreement exists in connection with the dismissal of the Indictment," the District

Court directed the disclosure of additional information. *Id.* at 116. Under Rule 48(a), the Court observed, even where defendants consent to dismissal, the Court must "be satisfied that the reasons advanced … for the proposed dismissal are substantial and the real grounds upon which the application is based." *Id.* at 115 (internal quotations omitted). While the Court might have demanded extensive information, given the serious nature of its concern, it instead issued a restrained order directing Defendant Gautam Adani to address two narrow questions concerning any offer or agreement made in connection with dismissal.

### F. Defendant Adani and His Counsel Respond to the District Court's July 8 Order, Contradicting Previous Statements and Raising Additional Concerns About the Investment Promise.

In response to its July 8 Order, the District Court received not only the Affidavit from Defendant Gautam Adani ("Adani Affidavit") but also a Declaration volunteered by Adani's counsel. These submissions (both omitted from the Government's Addendum) provided additional information concerning the investment promise, but also raised inconsistencies with prior representations made to the District Court. *See* Suppl.Add. 117-28.

The Adani Affidavit averred that the only offers or agreements he was aware of were the settlement terms with the SEC and the Treasury Department's Office of Foreign Assets Control. *Id.* at 118 ¶ 2. However, Mr. Adani also described a series of "settlement discussions" with both the DOJ and SEC in 2026 where his counsel

had suggested that his prior "publicly stated intent to invest $10 billion in the United States might be part of a resolution of these matters if that was what the DOJ or SEC wanted." *Id.* at 119 ¶ 4. Mr. Adani understood that DOJ subsequently stated it would not consider this potential investment in determining whether to seek dismissal. *Id.*

The Declaration of counsel detailed again the efforts made to persuade the Government that the Indictment suffered from factual and legal deficiencies. *Id.* at 121-25. Counsel specifically acknowledged that on two occasions in 2026, he had stated in discussions with DOJ that, as part of resolving the charges, the Adani Group (a multinational conglomerate founded by Gautam Adani) would be willing to invest $10 billion in the United States. *Id.* at 124-25 ¶ 9. Counsel also volunteered that USA Nocella had sent an email advising that the U.S. Attorney's Office categorically rejected the proposal made in counsel's April 17, 2026 slide deck presentation that Defendants invest $10 billion in the U.S. as part of resolving the charges. *Id.* at 126 ¶ 12. Notably, this seemed to contradict Mr. McCotter's July 4 Letter stating that he was the sole decisionmaker.

### G. In Response to the July 15 Submissions, the District Court Requests Additional Information.

The July 15 submissions of Adani and his counsel led the District Court to issue another order (omitted from the Government's Addendum), regarding concerns prompted by those submissions. Suppl.Add. 129-34. The Court noted

that, while it had sought a prompt resolution of the Government's motion, the parties continued to provide information in "piecemeal fashion" and "*volunteer* information not requested by the court" that required it to further probe "the real grounds" for dismissal. *Id.* at 130 (quoting *United States v. Adams*, 777 F. Supp. 3d 185, 208 (S.D.N.Y. 2025)).

Specifically, the description of USA Nocella's email prompted the District Court to order disclosure of two additional items. First, the email "appear[ed] to directly contradict that claim [that Mr. McCotter had been the sole decisionmaker] and call into doubt whether Mr. McCotter's professed reasons for seeking dismissal of the Indictment are the 'real' and complete reasons on which the Government's motion is based," leading the Court to request an affirmation from USA Nocella. *Id.* at 132. Second, because the description of the Nocella email's "categorical[] rejection" of the Adanis' offer suggested a specific proposal for resolution, the District Court required the full email. *Id.* at 133.

### H. Adani's Counsel and USA Nocella Provide the Information Directed by the July 15 Order.

In response to the District Court's July 15 Order, counsel provided the full email described in his Declaration, Suppl.Add. 135-37, and USA Nocella submitted a declaration stating that he had sent the email at Mr. McCotter's "direction, or authorization" and that he has "no basis to believe that the reasons advanced by Mr. McCotter for the proposed dismissal are not the real grounds

upon which the application is based." Suppl.Add. 138-39. Having received those submissions (both omitted from the Government's Addendum), the District Court proceeded to rule on the Government's motion, at least in part.

### I. The District Court Dismisses Counts Two, Three and Four and Requests Further Information About the Proffered Reasons for Dismissing Counts One and Five.

On August 10, 2026, the District Court dismissed with prejudice Counts Two, Three and Four, but reserved judgment as to Counts One and Five. Add., Attach. 4. To reach this result, the District Court examined the support for each proffered rationale for dismissal, which in most cases meant comparing the rationale to the allegations within the four corners of the Indictment. As to the securities- and wire-fraud charges, the Court concluded that one of the Government's rationales—that the allegedly false statements underlying those charges amounted to non-actionable expressions of puffery—was supported by the Indictment's allegations, *id.* at 34-37, and accordingly dismissed those Counts.

As to Counts One and Five, however, the District Court's analysis produced a different result. With respect to the general reasons for dismissal, all but one were inconsistent with either the face of the Indictment or the record: (1) the contention that "[t]his is a foreign case" ignored the alleged conduct that took place in the United States (*e.g.*, Indictment ¶¶ 78, 126), including Defendants' meetings in New York with the FBI, SEC and DOJ; (2) the contention that "[n]ot a single penny has

ever been lost" ignored that the charges in Count One and Count Five did not require financial loss; (3) the contention that the prior administration unsealed the case as a "name and shame" ignored that the Indictment was brought by officials across four different government offices; (4) the contention of "[e]xtraordinary proof problems" based on the location of evidence and witnesses in India ignored that both Count One (in part) and Count Five (in full) involved conduct that occurred in the United States; and (5) the contention that "Defendants have never appeared and probably never would" ignored that the record contained no indication of Defendants' locations or whether DOJ had made any efforts to secure their presence. *Id.* at 24-30.

As to the remaining general contention, that "India has investigated … and found no actionable misconduct," the District Court found it inconsistent with the evidence from outside the Indictment offered by the Government. *Id.* at 25-27. The July 4 McCotter Letter had attached orders from an Indian commission and two Indian courts in support of his rationale. Suppl.Add. 81-112. However, upon review of those orders, the District Court found that those bodies had decided *not* to investigate *other* whistleblower complaints involving the Adanis and their allegedly noncompetitive business practices.

As to the charge-specific rationales, the District Court noted that the Indictment's allegations appeared to contradict Mr. McCotter's stated reasons for

dismissing the FCPA charge. Add., Attach. 4 at 38-42. For example, the Blanche Memorandum factors, on which Mr. McCotter relied, include whether the criminal conduct constituted serious misconduct bearing "strong indicia of corrupt intent tied to particular individuals." *Id.* at 40. Count One alleged a $250 million bribery scheme conducted by five individuals, which the July 4 McCotter Letter failed to address. *Id.* at 41. Similarly, as to the obstruction charge, the Court noted that Mr. McCotter's only proffered reason—that the Indictment's obstruction theory "makes little sense" because the Defendants hired law firms—ignored concrete allegations of certain Defendants' destroying and concealing evidence and making false statements to law enforcement at interviews in New York City. *Id.* at 42-43.

As to both counts, the District Court made clear that there might well be information to support the government's request for dismissal. *Id.* at 42, 44. Because such information had not been presented, however, it found that "the Department has not yet satisfied Rule 48(a)'s requirements." *Id.* at 44. It accordingly reserved judgment and renewed its direction that the Department provide sufficient support for each reason for dismissing Counts One and Five. *Id.* at 46.

### J. The Government Refuses to Provide Additional Information and Imposes a Deadline on the Court.

In response to the August 10 Order, Mr. McCotter filed a letter the next day. Add., Attach. 5. The August 11 Letter largely ignored the Order's detailed

description of the evidence contradicting the Government's presentation. For example, the Letter failed to address the inconsistency between the stated rationale that Indian authorities had investigated the conduct at issue and the documents offered in support of that assertion.

Instead, the August 11 Letter argued that the topics raised by the District Court were a matter of prosecutorial discretion, and suggested that the Court was intruding on that executive function. Rather than respond to the District Court's invitation to provide additional factual support for dismissal, the August 11 Letter foreclosed any further submissions and imposed a deadline on the Court, stating that if the Court "declines to dismiss the remaining charges with prejudice by the end of the day on August 25, the Government intends to seek appellate relief … ." *Id.* at 3.

In response to the August 11 Letter, the District Court issued a text order (omitted from the Government's Addendum) the following day, directing the Government to review the August 10 Order and comply by August 31, 2026. Suppl.Add. 140.

On August 14, 2026, Mr. McCotter responded with a short letter under oath, once again failing to respond to the inconsistencies and contradictions that the District Court detailed in its August 10 Order. Rather, he contended that because he was the "actual decisionmaker" for the dismissal, "the statements of the actual

decisionmaker provide any necessary evidentiary basis in full." Add., Attach. 6 at 1. He demanded that the Court deny the motion to dismiss to "allow for appellate relief." *Id.* at 2.

### K. Based on the Government's Refusal to Provide Additional Information, the District Court Denies Dismissal of the Remaining Two Counts, but Continues to Urge the Government to Provide Information.

On September 3, 2026, after the Government refused to provide additional information, the District Court denied the pending portions of the Rule 48(a) motion without prejudice on the basis that the Government had not yet met the procedural requirement of Rule 48(a), given the incongruities between its proffered rationales for the dismissal of Counts One and Five and the record before the Court. Add., Attach. 7 at 7, 13-14 (citing *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019)). "Accepting unsubstantiated reasons or reasons that appear to be directly contradicted by the evidence that is before the court, would defeat the purpose of the rule 48(a) enterprise." *Id.* at 14. The Court explicitly encouraged DOJ to submit additional factual support for its proffered reasons.

The Government's writ of mandamus followed.

# ARGUMENT

## I. LEGAL STANDARD

### A. The Writ of Mandamus.

The writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (citations and internal quotation marks omitted). "[T]he writ cannot be used 'to actually control the decision of the trial court.'" *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 245 (1964) (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953)).

"[T]hree demanding conditions must be satisfied before the writ may issue: (1) the petitioner must 'have no other adequate means to attain the relief [it] desires;' (2) the petitioner must satisfy 'the burden of showing that [its] right to issuance of the writ is clear and indisputable;' and (3) the issuing court 'must be satisfied that the writ is appropriate under the circumstances.'" *In re United States*, 945 F.3d 616, 623 (2d Cir. 2019) (quoting *Cheney*, 542 U.S. at 380-81). If any of these conditions is not met, mandamus is not appropriate.

### B. Federal Rule of Criminal Procedure 48(a)

Rule 48(a) provides that "[t]he government may, with leave of court, dismiss an indictment." Fed. R. Crim. P. 48(a). Prior to Rule 48(a)'s enactment, indictments were automatically dismissed upon the government's motion. Fed. R. Crim. P.

48(a) advisory committee's note to 1944 adoption; *see also Adams*, 777 F. Supp. 3d at 205 & n.24 (providing history of Rule 48(a)). "[W]ith leave of court"—language which was added by the Supreme Court in its review of the proposed rule—requires the court to exercise discretion in considering a request for dismissal. *Rinaldi v. United States*, 434 U.S. 22, 29-30 & n.15 (1977) (noting in dicta "[t]he words 'leave of court' … obviously vest some discretion in the court."). "'Rule 48(a) … was intended as a power to check power.'" *United States v. Blaszczak*, 56 F.4th 230, 240 (2d Cir. 2022) (quoting *United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995) (alteration accepted)).

The government's decision to dismiss a prosecution is entitled to a presumption of good faith under Rule 48(a). *Rinaldi*, 434 U.S. at 29-30 & n.15. However, this presumption is not conclusive, or "there would be no purpose to Rule 48(a)." *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*, 228 F. Supp. 483, 486 (S.D.N.Y. 1964). Accordingly, for a court to exercise its discretion, the government must, if requested, set forth the basis for its motion to dismiss. *Adams*, 777 F. Supp. 3d at 208 (collecting cases); 3B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 802 (4th ed. April 2026 update) (the court "must have sufficient factual information supporting the recommendation."). The court also must be satisfied that the reasons for dismissal are "the real grounds upon which the application is based," *Greater Blouse*, 228 F.

Supp. at 486, and that the Government's motion is not prompted by considerations either prejudicial to the defendant or "clearly contrary to the public interest," *Rinaldi*, 434 U.S. at 29-30 & n.15. Examples of disservice to the public interest include "bribery, animus towards the victim, or a desire to attend a social event rather than trial—in other words, bad faith." *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 141 (2d Cir. 2017) (citations and quotation marks omitted). *See also Rinaldi*, 434 U.S. at 30 (regardless of the government's reasons for initiating or maintaining a prosecution, the "salient issue" as to its later decision to terminate it is whether the request to dismiss the indictment is "tainted with impropriety").

### C. District Court's Supervisory Power

The supervisory power "permits federal courts to supervise 'the administration of criminal justice' among the parties before the bar." *United States v. Payner*, 447 U.S. 727, 735 n.7 (1980) (quoting *McNabb v. United States*, 318 U.S. 332, 340 (1943)). It is not restricted to the protection of explicit constitutional rights. *McNabb*, 318 U.S. at 341. Rather, it exists "in order to maintain respect for law" and to "promote confidence in the administration of justice." *Olmstead v. United States*, 277 U.S. 438, 484 (1928) (Brandeis, J., dissenting). "[S]ince *Payner*, [this Court has] recognized that within their supervisory powers, courts should 'not hesitate to scrutinize the Government's conduct to ensure that it comports with the highest standards of fairness.'" *In re United States*, 945 F.3d at

632 (Parker, J., concurring) (quoting *United States v. Johnson*, 221 F.3d 83, 96 (2d Cir. 2000)).

## II. A WRIT OF MANDAMUS DOES NOT ISSUE BASED ON THE GOVERNMENT'S IMPATIENCE OR IRRITATION.

### A. The District Court Has Not Foreclosed the Relief Sought in the Petition; Far From It.

In its most recent Order, the District Court expressly encouraged further briefing on the remaining two counts. The Court explained that it was not questioning the Government's authority to dismiss or the validity of its reasons, but rather was seeking clarification regarding the contradictions between the proffered reasons and the record, including the allegations in the Indictment. The District Court made clear that just one uncontradicted reason per count would suffice to justify dismissal. Thus, the Government has not established that it has "no other adequate means to attain the relief [it] desires." *Cheney*, 542 U.S. at 380. "This requirement is generally unsatisfied where [] the district court has not yet foreclosed the relief sought in the petition, *see Kerr v. U.S. Dist. Court*, 426 U.S. 394, 404-06 (1976); *see also, e.g.*, *Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund*, 214 F.3d 132, 135 (2d Cir. 2000) (per curiam)." *In re United States*, 945 F.3d at 623.

While this Court has not previously addressed this factual situation, the D.C. Circuit, sitting en banc in *In re Flynn*, denied a writ of mandamus where a district

court had not granted the Government's Rule 48(a) motion, because, as here, the district court could still grant the motion. 973 F.3d 74, 79 (D.C. Cir. 2020). Similarly, the Third Circuit held that mandamus was not appropriate to prevent a court from holding a hearing on the prosecution's reasons for dismissing an indictment, given that Rule 48(a) may be used by a court "to let 'sunshine' into areas where local authorities may be suspected of inappropriate dealings." *In re Richards*, 213 F.3d at 777.

In similar contexts, this Court has denied mandamus relief. In *Philip Morris*, the petitioner sought a writ of mandamus directing the district court, which had repeatedly declined to rule on class certification, to decide the issue prior to trial. 214 F.3d at 134. This Court held that district courts ordinarily should decide class certification prior to trial and should do so there, but held mandamus inappropriate "in the absence … of a definitive ruling by the district court that it would under no circumstances decide class certification before trial." *Id.* at 135. Likewise, in *Application of Cohn*, this Court denied petitioner's mandamus application to adjourn trial where it was "clear that the district judge, in denying the application for adjournment, does not view his action as being final" and "may, upon further application, make such further ruling regarding the continuance of the trial." 416 F.2d 440, 441 (2d Cir. 1969). Chief Justice Waite long ago summed it up: "The general principle which governs proceedings by *mandamus* is, that whatever can

be done without the employment of that extraordinary remedy, may not be done with it." *Ex parte Rowland*, 104 U.S. 604, 617 (1881).

### B. Rule 48(a)'s Leave of Court Provision Clearly Contemplates a Court's Ability to Raise Questions About the Public Interest.

The Government's request for mandamus rests on the premise that the District Court, by declining to dismiss parts of the Indictment until the Government has provided at least one uncontradicted or facially plausible reason, clearly and indisputably has incorrectly applied Rule 48(a). But Rule 48(a) is a "strange animal." *In re Richards*, 213 F.3d at 786. It does not require automatic dismissal by the Court based upon a consented-to government motion for dismissal, contrary to the Government's argument. Pet. 23. Instead, it permits courts to inquire whether the decision to dismiss is prompted by considerations that are contrary to the public interest. And where such considerations may be present, as here, it permits a court to keep inquiring. On this record, this Court cannot have a "firm conviction" that the District Court's view that Rule 48(a) permitted it to seek further information was incorrect.

*First*, neither the Supreme Court nor this Court has defined the scope of the District Court's review under Rule 48(a)'s "leave of court" provision when a defendant has consented to the dismissal. *See Rinaldi*, 434 U.S. at 29 n.15 ("While [Rule 48(a)] obviously vest[s] some discretion in the court, the circumstances in

which that discretion may properly be exercised have not been delineated by this Court").

In cases where, as here, the defendant has consented to dismissal, Rule 48(a) has "been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest." *Rinaldi*, 434 U.S. at 29 n.15. Importantly, the Supreme Court has endorsed a judicial inquiry that goes beyond the four corners of the Government's motion to dismiss. In fact, the Court based its ultimate disposition in *Rinaldi*—reversing the Fifth Circuit and upholding the Government's effort to dismiss the indictment—on its own "examination of the record." *Id.* at 30. Both before and after *Rinaldi*, appellate courts have approved such examination:

> Even though a judge's discretion under Rule 48(a) is severely cabined, the rule may serve an important interest as an information- and accountability-producing vehicle. A judge who hears a Rule 48(a) motion has independent responsibilities that may bear on his or her decision on the requested dismissal. In other words, there are independent rights, interests, and duties that a court may protect … through using Rule 48(a) as a "sunshine" provision that exposes the reasons for prosecutorial decisions.

*In re Richards*, 213 F.3d at 788; *United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984) ("to honor the purpose of the rule … [a court] at the very least must know the prosecutor's reasons for seeking to dismiss the indictment and the facts underlying the prosecutor's decision."); *United States v. Salinas*, 693 F.2d 348, 352 (5th Cir. 1982) (the prosecutor seeking dismissal "is under an obligation to supply

sufficient reasons [to support the motion to dismiss]—reasons that constitute more than a mere conclusory interest.") (internal quotation marks, citation and footnote omitted); *United States v. Ammidown*, 497 F.2d 615, 622 (D.C. Cir. 1973) ("The requirement of judicial approval entitles the judge to obtain and evaluate the prosecutor's reasons."). The contrary rule proposed by the Government would read the "leave of court" provision, which was added by the Supreme Court, out of the Rule.

*Second*, the District Court's actions—requesting information and expressing concern about contradictions and seemingly unreliable representations—neither impair nor encroach on the Executive's prosecutorial power. *See In re Richards*, 213 F.3d at 778 (the "Territorial Court's mere effort to obtain information surrounding the prosecution's attempted dismissal of Richards' information does not suffice to work a substantive change in the prosecution's power of *nolle prosequi*"). The District Court has not told the Executive how to charge, whom to charge, or that it must (or must not) proceed with any charge. It has not appointed a substitute prosecutor, unlike in the single case cited by the Government for the proposition that "[c]ircuit courts utilize mandamus to address district court refusals to dismiss charges at the government's request." Pet. 17 (citing *In re United States*, 345 F.3d 450, 451-53 (7th Cir. 2003) (finding that the district court was improperly "playing U.S. Attorney" where district court refused to dismiss a particular count

and appointed a private attorney to prosecute that count)). The District Court's follow-up questions have in each instance been prompted by statements that appeared inconsistent with the Indictment or other evidence proffered by the Government.

The District Court's actions are consistent with those undertaken by other courts in this Circuit, particularly in high-profile cases or cases with "checkered" records. For example, in 1964, the Department of Justice's Antitrust Division moved under Rule 48(a) to dismiss an indictment filed five years earlier charging a sprawling conspiracy to violate the Sherman Act in the blouse industry in four states. *Greater Blouse*, 228 F. Supp. at 486. The district court required the Government to submit affidavits explaining its reasons; the Government submitted three different affidavits explaining proof problems identified by various prosecutors. *Id.* at 485 n.3. Just last year, in *Adams*, the district court required extensive briefing from both the Government and an *amicus* appointed to represent the views of the defendant before granting the motion to dismiss the Indictment. 777 F. Supp. 3d 185.

So too in other Circuits. For example, earlier this year, in a case concerning the alleged vandalism of the Reflecting Pool on the National Mall, the U.S. Attorney's Office for the District of Columbia filed a 20-page Rule 48(a) motion describing additional evidence that contradicted the evidentiary basis underlying its

charge. The motion included photos and statements by witnesses. *United States v. Hearn*, Case No. 2026 CF2 10237 (D.C. Sup. Court) (filed July 31, 2026).

*Third*, the District Court did not require the Government to waive prosecutorial privilege, nor to provide confidential or internal information. The Court required the Government to provide its reasons for dismissal and their factual basis. Nor did the Government, despite its claim of a coerced limited waiver of privilege (Pet. 1, 2, 21-22), disclose any confidential, internal information. It disclosed information it had discussed with (and largely received from) numerous defense counsel at meetings, which no privilege protects. The closest it came to disclosing its deliberative rationale was when it volunteered its "non-consideration" of the $10 billion investment offer, but that offer was made by defense counsel at a meeting with numerous non-prosecutor attendees, and the Government's (or at least the Eastern District's) rejection of it was memorialized in an email to defense counsel not protected by any privilege.

The Government objects to the District Court's suggestion that one way to provide a reliable basis for dismissal of the FCPA count might be the provision of expert reports counsel had submitted to the Government addressing legal problems with the alleged bribery scheme. Pet. 2, 34. But this was a suggestion, not a mandate. Nor would providing these reports implicate privileged materials, since they were provided to the Government by defense counsel. These are exactly the

kind of materials the Government voluntarily disclosed in *Hearn*: information obtained after the Indictment that altered its view of the evidentiary or legal strength of the charges. *Hearn*, Case No. 2026 CF2 10237.

### C. Permitting the District Court to Finish Deciding the Rule 48(a) Motion Will Cause No Prejudice.

The Government has identified no prejudice from permitting the District Court to finish its work except that "five defendants remain in limbo." Pet. 17. No one is in custody; there is no record of any efforts made, at any point, to extradite any Defendant; and even if a Defendant had been arrested, the Supreme Court has held that the burdens of litigation, even for criminal defendants, are not a sufficient basis for the writ of mandamus. *See, e.g.*, *Parr v. United States*, 351 U.S. 513, 519-20 (1956) (finality requirements assume "the [defendant] will have to hazard a trial … before he can get a review" and "bear[] the discomfiture and cost of a prosecution" (internal quotation omitted)). Not even four months elapsed from the Government's filing of its initial motion for dismissal to the District Court's September 3 order denying the motion without prejudice as to two counts and requesting further information. By contrast, 19 months elapsed between the issuance of the Indictment and the Government's filing of the motion to dismiss.

## III. WHERE THE GOVERNMENT OFFERS FACIALLY INCONSISTENT AND CONTRADICTED REASONS, THE COURT HAS THE AUTHORITY AND DUTY TO REQUEST FURTHER INFORMATION UNDER RULE 48(a) AND ITS INHERENT POWERS.

The Executive can dismiss an indictment for almost any reason, but when it offers reasons that make no sense or are contradicted by the factual support the Government itself provides, the Court, before granting dismissal, has both the authority and the duty to request further information. As Judge Friendly once observed, while a court's review of the decision to dismiss is deferential, a court is "not required to exhibit a naivete from which ordinary citizens are free." *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977).

The Third Circuit has recognized a trial court's concern with being misled as a basis for further inquiry under Rule 48(a): "Another interest that could be served by a hearing is the court's inherent authority to ensure that its processes are not being abused." *In re Richards*, 213 F.3d at 788-89 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("[A] court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.")); *see also Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020) (discussing courts' inherent power to deter abuse of the judicial process through sanctions); *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) (en banc) (same). *See also Ammidown*, 497 F.2d at 620-21 (contrasting "an application made in good

faith" with one where "the assigned reason for dismissal has no basis in fact"); *United States v. Hayden*, 860 F.2d 1483, 1489 (9th Cir. 1988) (explaining that use of "the Rule 48(a) motion as a pretext to bypass [the court's] denial of [a] continuance" would be "a clear act of bad faith"). This concern with ensuring against bad faith is indivisible from the court's obligation to ensure the requested dismissal is in the public interest. *See, e.g.*, *Smith*, 55 F.3d at 159. Plainly, a pretextual rationale cannot satisfy the Government's obligation to set forth the "real grounds upon which the application is based." *Greater Blouse*, 228 F. Supp. at 486. If faced with a motion based solely on a pretextual or implausible rationale, a court is well within its discretion to deny the motion and require the government to come forward with its *actual* reasons for seeking dismissal. *See id.* Indeed, logic indicates that a court—which must set forth the basis for a decision to grant leave—could not properly exercise its discretion otherwise. *See Derr*, 726 F.2d at 619 (concluding that "the trial court at the very least must know the prosecutor's reasons for seeking to dismiss the indictment").

The Government cannot meet its burden of showing it has a clear and indisputable right to an order prohibiting the District Court from asking further questions in the Rule 48(a) context, at least not on this record, where the Government repeatedly volunteered facially implausible and contradictory reasons for dismissing the Indictment. The incongruity between the Government's

proffered rationales for dismissal of Counts One and Five and the record—largely facts alleged in the Indictment itself—necessitated the District Court to continue to probe whether "[w]hat was provided here was more of a distraction" than a legitimate explanation. *Dep't of Com.*, 588 U.S. at 785.

First, of course, there were the "general considerations" adduced by the Government, such as many of the actions and individuals being "foreign," a fact that would apply in most FCPA cases and is not among the considerations detailed in the Blanche Memorandum.

The charge-specific reasons for dismissal of the two remaining counts were similarly concerning. For example, both on mandamus and before the District Court, the Government asserts that India has already investigated the allegations underlying the FCPA count, Pet. 8, 9; Add., Attach. 3; Suppl.Add. 81-112, but the documents offered by the Government regarding investigations by India state that no investigation was done and that the allegations at issue were different from those in the Indictment, Suppl.Add. 81-112. The Government did not need to provide proof of investigations in India, but it chose to do so, and that proof contradicted its own assertion. The District Court could not have ignored those contradictions. Similarly, while the Court did not ask the Government to explain whether the FCPA count was consistent with current prosecutorial priorities, the Government chose to do so, and its opinion—that the alleged $250 million bribery

scheme, for example, is not sufficiently "egregious"—was mystifying. Pet. 9; Add., Attach. 3 at 8-9.

As to the obstruction count, the Government first provided a reason that ignored allegations of evidence destruction and lies to law enforcement. Add., Attach. 3 at 9. Then, a month later, after the District Court asked for additional information, the Government asserted that it saw proof problems because of a potential advice of counsel defense, but still failed to address the allegations that certain defendants had deleted documents and lied to law enforcement. Add., Attach. 5 at 3. The Government also repeatedly has stressed that the five remaining Defendants will never appear (Pet. 8, 31; Add., Attach. 3 at 6-7; Add., Attach. 5 at 2), but never explained any effort *it* has made to arrest them. Again, the Government did not need to volunteer the Defendants' non-appearance as a reason, but once it did, the question of "isn't that in your hands?" was difficult to avoid.[5]

On such a record, not only Rule 48(a), but the Court's inherent supervisory authority—to ensure that the parties before it are not presenting misleading information—provides authority for further inquiry. A contrary ruling would invite parties to mislead courts.

[5] The United States and India have an active extradition treaty. Just last month, FBI Director Kash Patel heralded the arrest and extradition of an Indian national to the U.S. to face a $600K fraud charge. https://x.com/FBIDirectorKash/status/2110842513095327867.

## CONCLUSION

For the reasons stated, the Petition for Writ of Mandamus should be denied.

Dated: October 30, 2026
New York, New York

Respectfully submitted,

**SHER TREMONTE LLP**

By: */s/ Deirdre D. von Dornum*

Deirdre D. von Dornum
Michael Tremonte
Douglas Jensen
Emma Schwartz
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
dvondornum@shertremonte.com
mtremonte@shertremonte.com
djensen@shertremonte.com
eschwartz@shertremonte.com

*Counsel for Hon. Nicholas G. Garaufis*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 28.1.1(b) because, as calculated by Microsoft Word, it contains 7,788 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Times New Roman font.

Dated: October 30, 2026
New York, New York

Respectfully submitted,

**SHER TREMONTE LLP**

By: *\/s/ Deirdre D. von Dornum*
Deirdre D. von Dornum
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
dvondornum@shertremonte.com

*Counsel for Hon. Nicholas G. Garaufis*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated: October 30, 2026
New York, New York

Respectfully submitted,

**SHER TREMONTE LLP**

By: */s/ Deirdre D. von Dornum*
Deirdre D. von Dornum
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
dvondornum@shertremonte.com

*Counsel for Hon. Nicholas G. Garaufis*