# 26-2730

*To Be Argued By:*
JARED M. BEIM

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

**DOCKET NO. 26-2730**

---

**IN RE UNITED STATES OF AMERICA,**

***Petitioner.***

---

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK
NO. 1:24-CR-433 (NGG)
THE HONORABLE NICHOLAS G. GARAUFIS

---

## REPLY BRIEF FOR THE UNITED STATES OF AMERICA

---

R. TRENT MCCOTTER
Acting Deputy Attorney General
JARED M. BEIM
Senior Counsel
United States Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
trent.mccotter@usdoj.gov
202-514-2105

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ ii

ARGUMENT ........................................................ 1

A. The District Court's Rationales For Interfering With the Government's Exercise of Prosecutorial Discretion Lack Merit. ........................................................ 2

B. The District Court's Objections to Mandamus Relief Lack Merit. ........................................................ 18

CONCLUSION ........................................................ 23

CERTIFICATE OF COMPLIANCE ........................................................ 24

CERTIFICATE OF SERVICE ........................................................ 25

# TABLE OF AUTHORITIES

**Cases:**

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) .......... 22

*Flynn, In re*,
973 F.3d 74 (D.C. Cir. 2020) .......... 20

*ICC v. Brotherhood of Locomotive Eng'rs*,
482 U.S. 270 (1987) .......... 5

*INS v. St. Cyr*,
533 U.S. 289 (2001) .......... 11

*Parr v. United States*,
351 U.S. 513 (1956) .......... 22

*Philip Morris Inc. v. National Asbestos Workers Med. Fund*,
214 F.3d 132 (2d Cir. 2000) .......... 20

*Richards, In re*,
213 F.3d 773 (3d Cir. 2000) .......... 20

*Rinaldi v. United States*,
434 U.S. 22 (1977) .......... 11

*United States, In re*,
345 F.3d 450 (7th Cir. 2003) .......... 3, 9, 10

*United States v. Adams*,
777 F. Supp. 3d 185 (S.D.N.Y. 2025) .......... 7, 8

*United States v. Armstrong*,
517 U.S. 456 (1996) .......... 5

*United States v. B.G.G.*,
53 F.4th 1353 (11th Cir. 2022) .......... 4, 5, 6, 9, 11

*United States v. Cowan*,
524 F.2d 504 (5th Cir. 1975) .......... 6

*United States v. Fokker Servs. B.V.*,
818 F.3d 733 (D.C. Cir. 2016) .......................................................... 3, 9, 11

*United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*,
228 F. Supp. 483 (S.D.N.Y. 1964) .......................................................... 8

*United States v. HSBC Bank USA, N.A.*,
863 F.3d 125 (2d Cir. 2017) .......................................................... 4, 9, 10, 12, 13

*United States v. Marion*,
404 U.S. 307 (1971) .......................................................... 22

*United States v. Tsarnaev*,
595 U.S. 302 (2022) .......................................................... 12

*Wayte v. United States*,
470 U.S. 598 (1985) .......................................................... 9, 10, 17

## ARGUMENT

The Constitution vests in the Executive Branch the exclusive power to decide when—and when *not*—to prosecute potential crimes. Exercising that power here, the Department of Justice filed an unopposed motion to dismiss Counts One and Five of the indictment with prejudice, pursuant to Federal Rule of Criminal Procedure 48(a), based on a determination that those charges did not warrant the expenditure of prosecutorial resources, presented "extraordinary proof problems," and were inconsistent with "Department-wide policy" on prosecuting violations of the Foreign Corrupt Practices Act. Doc. 37 at 6-9.

The Executive Branch was not obligated to explain its confidential reasoning and internal decision-making process to the district court. Nonetheless, in response to a district court directive, the government agreed to a limited waiver of applicable privileges and the final decisionmaker (now-Acting Deputy Attorney General R. Trent McCotter) provided the court with an extensive account of his rationale for dismissal. Doc. 37 at 5-10; Doc. 50 at 1-3. The district court accepted Mr. McCotter's reasoning as the government's "real" motivation for seeking dismissal and identified no evidence that the government had sought dismissal in bad faith. Doc. 49 at 22. Nevertheless, it denied the unopposed Rule 48(a) motion because it was unconvinced that the

government's factual, legal, and policy-based concerns were justified based on the facts of this case. Doc. 57 at 7-14.

That decision constitutes an untenable violation of both Article II and Article III of the Constitution. Rather than explain how its decision complies with the constitutional framework, the district court has filed an amicus brief in which it attempts to obscure these serious separation-of-power concerns by suggesting that the government is simply being "impatien[t]" with the court's approach. That is incorrect. The court's denial of the unopposed Rule 48(a) motion—which occurred after months of attempts by the parties to appease the court—was an extraordinary infringement on the Executive's performance of its constitutional duties. This Court should grant the government's mandamus petition and direct the district court to grant the government's unopposed motion to dismiss the indictment with prejudice.

## A. The District Court's Rationales for Interfering with the Government's Exercise of Prosecutorial Discretion Lack Merit.

The district court's denial of the unopposed motion to dismiss usurped the government's prosecutorial authority under Article II and exceeded the court's judicial authority under Article III. *See* Pet. 18-20.[1] As courts of appeals have uniformly recognized, the Constitution precludes a court from "deny[ing] a

[1] "Pet." refers to the government's petition for a writ of mandamus. "Br." refers to the district court's amicus brief.

prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016); *see In re United States*, 345 F.3d 450, 453 (7th Cir. 2003) (issuing writ where the court denied a Rule 48(a) motion because it "simply disagree[d] with the Justice Department's exercise of prosecutorial discretion"). Yet the district court's brief opposing mandamus says almost nothing about the "settled constitutional understandings under which authority over criminal charging decisions resides fundamentally with the Executive." *Fokker*, 818 F.3d at 741. Nor does the court acknowledge that, under Article III, a federal court has no power to compel the Executive to prosecute a case once the parties have agreed to end it. The court instead seeks to relitigate its decision to second-guess the government's exercise of prosecutorial discretion and relies on a misunderstanding of Rule 48(a) and its supervisory powers to support that decision. This Court should reject those efforts.

1. The district court dedicates much of its brief to defending its criticism of the government's prosecutorial decision-making. It repeatedly notes (Br. 3, 10-12, 14, 17) that the government "omitted" publicly available filings on the underlying docket from its Addendum, presumably to suggest that the government wanted to conceal the information in those filings from the Court. And this information, the court suggests (Br. 11-14), demonstrates that the

government's assessment of the "factual and legal deficiencies" in its case was either mistaken or ill-advised. *See also* Br. 32-33 (describing the charged bribery scheme as "'egregious'" and the government's decision to seek dismissal as "mystifying"). As a result, the court concludes (Br. 14-18) that it was entitled to deny the unopposed motion to dismiss because the government failed to produce some unspecified quantum of proof to satisfy the court that the government was exercising its prosecutorial discretion correctly.

That argument misses the point. There is no indication that the Department generally, or Mr. McCotter specifically, sought to dismiss the indictment in "bad faith," as might be the case if a dismissal were "'motivated by bribery, animus towards the victim, or a desire to attend a social event rather than trial.'" *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 141 (2d Cir. 2017); *cf. United States v. B.G.G.*, 53 F.4th 1353, 1362 (11th Cir. 2022) (explaining that a defendant "can establish bad faith" through proof that the "government sought the dismissal 'in order to achieve a tactical advantage in derogation of the defendant's rights'"). To the contrary, defendants in this case *agreed* with the government's decision to dismiss with prejudice and the district court determined that Mr. McCotter had identified the government's "real" reasons for seeking dismissal—including Mr. McCotter's assessment (following a review of the evidence, applicable law, and the Department's existing charging policies) that this prosecution was

inconsistent with the Justice Department's nationwide enforcement priorities and presented significant legal, factual, and practical hurdles to obtaining defensible convictions. Doc. 49 at 22; Doc. 37 at 5-9.

Because the Rule 48(a) motion was unopposed and sought dismissal with prejudice, and no evidence of bad faith exists, the district court was obligated to grant the motion. *See ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987) ("[I]t is entirely clear that the refusal to prosecute cannot be the subject of judicial review."); *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("'[I]n the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties.'"); *B.G.G.*, 53 F.4th at 1361-63 (explaining that a Rule 48(a) motion should be granted absent proof that the government was acting in "bad faith"). Instead, the court denied the unopposed motion because it disagreed with the government's reasons for seeking dismissal. In the court's view (Br. 30-33), Mr. McCotter misunderstood the Department's own policies and priorities and undervalued the seriousness of the "facts alleged in the Indictment itself." Those are neither valid nor plausible reasons to deny the government's Rule 48(a) motion.

For starters, the district court's criticism of Mr. McCotter's assessment makes little sense. As the senior Department official who "was the final and sole decisionmaker to seek dismissal," Doc. 37 at 3 n.1, Mr. McCotter's

conclusion that the government should no longer pursue the charges for various legal and practical reasons necessarily reflected the Department's prosecutorial priorities in this instance. Moreover, the fact that a grand jury found probable cause to indict has little bearing on the evaluation by the second-in-command of the Department of whether the government will be able to prove guilt beyond a reasonable doubt at trial and whether the charges are consistent with the Department's current enforcement policies and priorities. *See, e.g.*, *B.G.G.*, 53 F.4th at 1361 (explaining that the executive branch is "'the first and presumptively the best judge of whether a pending prosecution should be terminated'" (quoting *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975)).

Indeed, *every* motion to dismiss an indictment necessarily reflects a decision not to proceed despite a grand jury's finding of probable cause. The district court's concern with protecting the province of the grand jury is really just a disagreement with the Executive's exclusive constitutional power to decide whether to proceed with a prosecution the grand jury has authorized.

The district court's insistence (Br. 26-28) that its contrary findings neither "encroach[ed] on the Executive's prosecutorial power" nor "require[d] the Government to waive prosecutorial privilege" further confirms the constitutional defect with its decision. According to the court (Br. 26-27), it did not force the government to "proceed with any charge" because it would have granted the

motion to dismiss if the government had provided expert reports or some other indefinable and ephemeral evidence supporting Mr. McCotter's assessment that continuing this prosecution was inconsistent with the Department's enforcement priorities. But the court has yet to explain how the government could have further "[]substantiated," Doc. 57, Mr. McCotter's interpretation and application of the Department's enforcement priorities without "provid[ing] confidential or internal information," Br. 28. Moreover, the court's contention that the government must provide detailed evidence supporting its prosecutorial decision-making in these circumstances, if accepted, would undermine core separation-of-powers principles and have damaging practical consequences. Among other problems, it would routinely require the government to reveal sensitive strategic considerations and factual information, even when it chooses to drop a prosecution specifically to protect classified information, pending investigations, or other core Executive concerns.

The district court notes (Br. 27-28) that, in one case, a court "required extensive briefing" before granting an unopposed Rule 48(a) motion, *see United States v. Adams*, 777 F. Supp. 3d 185 (S.D.N.Y. 2025), and, in another, the government provided "additional evidence" supporting its Rule 48(a) motion, *see United States v. Hearn*, No. 2026 CF2 10237 (D.C. Super. Ct.). The court's reliance on those cases lacks merit. The court in *Adams* focused its inquiry on

whether it was required to dismiss the charges *without prejudice* to refiling them, and declined to resolve the Rule 48(a) motion based on the merits of the government's rationales for seeking dismissal. 777 F. Supp. 3d at 190-92, 236-37. Here, by contrast, dismissal was *with prejudice*. And the government's motion to dismiss in *Hearn* indicates that the prosecutors provided the additional information voluntarily for case-specific reasons—just as the Department did in this case when it "grant[ed] a limited waiver of the relevant privileges" to explain why the government was seeking dismissal. Doc. 37 at 5. In any event, the prosecutors' decision to provide additional information in *Hearn* does not prove that the district court acted within the bounds of its constitutional limits here.[2]

At bottom, the district court had no authority to interrogate the Department's enforcement priorities, its assessment of whether prosecutors

---

[2] The district court's reliance (Br. 27) on a district court antitrust case from 1964, in which the government provided attorney affidavits in support of its motion to dismiss, likewise falls short. In that case, the court recognized that Rule 48(a) "did not require supporting affidavits" but still asked for them "consistent with the Court's policy as applied in other cases." *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*, 228 F. Supp. 483, 485 n.3 (S.D.N.Y. 1964). Moreover, the court's description of those affidavits, *id.* at 485, provides no indication that they resembled the type of "expert reports" that the district court has suggested were necessary in this case, Doc. 57 at 9 n.11. They instead appear to have contained an attorney's views of the merits and demerits of the case, similar to Mr. McCotter's sworn submissions to the district court here. *Greater Blouse*, 228 F. Supp. at 485 (explaining that the attorney "opined as to the insufficiency of the presently available evidence").

should continue to expend the resources needed to pursue this case, or its concerns with the case's potential pitfalls. *See Fokker*, 818 F.3d at 737-38 (explaining that "[t]he Executive's charging authority embraces decisions about … whether to dismiss charges once brought" and that courts may not "second-guess the Executive's exercise of discretion over the … dismissal of criminal charges"); *HSBC Bank USA*, 863 F.3d at 138; *In re United States*, 345 F.3d at 453-54; *B.G.G.*, 53 F.4th at 1361. It does not matter whether the district court believes (Br. 32) that the alleged bribery scheme charged in the indictment is sufficiently "'egregious'" to warrant the continued attention of federal prosecutors. It does not matter whether the court agrees (*id.*) with the government's assessment of its own policies and priorities. And it certainly does not matter whether (*id.* at 32-33) the government's case-specific concerns about expending resources to prosecute a crime that occurred almost entirely in India might also apply to other cases involving different "'foreign'" defendants.

The Constitution vests the politically-accountable Executive Branch with the power to decide whether to continue prosecuting a criminal defendant based on the "strength" of the evidence, "the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte v. United States*, 470 U.S. 598, 607 (1985). A district court is "ill-suited" to second-guess a prosecutor's balancing

of those factors in any individual case. *Id.* at 607. The court agreed that the government's proffered reasons were the real reasons—that should have been the end of the matter. Because the government's unopposed motion to dismiss with prejudice rested on a textbook exercise of its prosecutorial discretion, and because the defendants had no countervailing constitutional interests to assert, the district court should have granted the motion.

2. The district court lacks any persuasive response to this Court's recognition that the Constitution vests the Executive with the power to decide "'whether to dismiss a [criminal] proceeding once brought.'" *HSBC Bank USA*, 863 F.3d at 138. The district court instead cites various cases (Br. 25-26, 30-31) that it believes favor a broad reading of a court's power under Rule 48(a). In none of those cases, however, did an appellate court affirm the denial of an unopposed Rule 48(a) motion. Like the Seventh Circuit, the government is "unaware … of any appellate decision that actually upholds a denial of [an unopposed] motion to dismiss a charge." *In re United States*, 345 F.3d at 453. Any statements in those cases about a court's authority to scrutinize the merits of the government's charging decisions when resolving an unopposed Rule 48(a) motion are thus dicta. And, to the extent those opinions elsewhere suggest that district courts may play a broader role in evaluating Rule 48(a) motions, such statements are inconsistent with the numerous Supreme Court decisions

reiterating the Executive's authority over charging decisions. *See* Pet. 27-28 (citing cases).

The district court erroneously contends that endorsing the "settled constitutional understanding" articulated in the government's petition, *Fokker*, 818 F.3d at 741, would "read the 'leave of court' provision … out of" Rule 48(a). Br. 26. As numerous courts have explained, however, the "'leave of court'" provision exists "to guard against the prospect that dismissal is part of a scheme of 'prosecutorial harassment' of the defendant through repeated efforts to bring—and then dismiss—charges." *Fokker*, 818 F.3d at 742 (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam)); *see B.G.G.*, 53 F.4th at 1361 (citing cases). Adopting the government's interpretation of Rule 48(a) would not prevent courts from continuing to provide that important safeguard when evaluating motions to dismiss. Reading the leave-of-court provision to authorize a court to stand in the way of a dismissal with prejudice that a defendant does not oppose, however, would violate Article II and Article III of the Constitution and run afoul of the need to avoid constructions that "raise serious constitutional problems." *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001).

Moreover, the district court fails to explain how its broad reading of Rule 48(a)'s leave-of-court requirement would work in practice. A court cannot compel the government to prosecute a case against its will, even if the court

believes that the refusal to prosecute is based on an incorrect view of the evidence, a misunderstanding of the Department's policies and enforcement priorities, or some other disagreement with the Department's assessment of the facts or law. The absence of any such means of enforcement confirms the government's position that Rule 48(a)'s leave-of-court requirement serves an entirely different interest—namely, to protect defendants from the potential harassment caused by dismissal *without* prejudice.

3. The district court asserts (Br. 2, 21-22, 33) that it was entitled to second-guess the government's prosecutorial discretion as an exercise of its own "inherent supervisory authority." According to the court (Br. 21), its supervisory authority extends beyond protecting explicit constitutional rights and permits it to "'scrutinize'" government conduct "'in order to maintain respect for law' and to 'promote confidence in the administration of justice.'" But even assuming such supervisory authority exists, it cannot be exercised in a manner that "conflict[s] with or circumvent[s] a constitutional provision." *United States v. Tsarnaev*, 595 U.S. 302, 315-16 (2022). After all, "[t]he supervisory power doctrine is an extraordinary one which should be sparingly exercised." *HSBC Bank USA*, 863 F.3d at 136 (quotation marks omitted). As this Court has explained, a court may exercise supervisory power in three limited circumstances: "'to implement a remedy for violation of recognized rights; to

preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct.'" *Id.* at 135.

4. Finally, the district court asserts that the government is not entitled to dismissal because it has failed to provide "at least one uncontradicted or facially plausible reason" in support. *See, e.g.*, Br. 30. Again, the government was not required to give any reason. But in any event, the court's claim is patently false. The government provided detailed and numerous explanations for its decision to dismiss, including among other things how it weighed the relevant factors in its own prosecutorial-priorities memorandum. *See* Pet. 32. The district court may disagree with how the government weighs various aspects of the case, but its disagreement with how the government chooses to allocate its scarce prosecutorial resources does not make its reasoning "contradictory."

In fact, the district court acknowledges that the weight of the evidence supports the government's reasons for dismissal, but simply characterizes its disagreement with the government as evidence of a contradiction or potential falsity. In its brief, the district court references many—though not all—of the reasons the government gave for seeking dismissal. Br. 8, 14-16. Of these numerous facially-valid reasons, however, the district court at most provides disagreements with the government's reasoning rather than any actual

contradictions—repeatedly falsely alleging that the government "ignor[ed]" a factor rather than simply weighed it differently.[3] For instance:

- The district court does not dispute that the overwhelming majority of alleged acts occurred in India (thus lessening the United States's interest)—but instead claims that some minor aspects may have occurred in the United States. Br. 14. So what? There is no contradiction there. Rather, the court simply emphasizes the small minority of acts, whereas the government emphasizes the overwhelming majority.

---

[3] The district court concedes that the three whistleblower complaints "raised issues arguably related to the factual allegations in the Indictment," but hangs its hat on the fact that the Indian court or commission in each concluded that "no investigation was warranted." Br. 9 n.3. This is a slender reed to allege a contradiction, as an Indian court or commission concluding that no investigation was warranted is a far cry from Indian law enforcement *not having investigated* any of the conduct.

Similarly, the district court claims that the U.S. Attorney's categorical rejection of the prospect of investing money in the U.S. as part of a settlement (Doc. 46-1) "seemed to contradict" Mr. McCotter's explanation that he was the sole decisionmaker (Br. 12). To the contrary, a U.S. Attorney explaining to defense counsel that an aspect of a defense offer would not be considered in no way contradicts the fact that Mr. McCotter was the one ultimately responsible for making the final decision on whether or not to dismiss charges.

- The district court does not argue that investors actually lost money on the relevant securities, but instead irrelevantly retorts that Counts One and Five do not require financial loss. Br. 14-15.
- The district court does not dispute that the prior administration unsealed the case as a "name and shame," but instead inappositely insists that "the Indictment was brought by officials across four different government offices." Br. 15.
- The district court does not argue that there are no proof issues given the overwhelming location of the evidence and witnesses in India, but instead bafflingly insists that some conduct "occurred in the United States." Br. 15. As explained above, that is no contradiction; it simply points to minor aspects rather than the great weight of facts.
- The district court does not dispute that defendants did not appear or likely would not appear before the court, instead faulting the government for not proving their locations or whether the government made sufficient efforts to arrest them from India. Br. 15, 33. It is entirely the prerogative of the Executive Branch to decide how and when to expend resources to attempt to arrest defendants, especially abroad, with extradition being fundamentally diplomatic in nature.

- The district court argues that there were allegations of defendants making false statements to law enforcement, Br. 14, 16, but this does not contradict the government's conclusion that the alleged conduct relied in part on the allegation that the defendants hired an American law firm to conduct an internal investigation to add the veneer of credibility to their conduct. *See* Indictment ¶ 76.

Finally, the district court offers the almost-entirely threadbare claim that the Indictment contradicted the factors articulated in the Blanche Memorandum, Br. 15-16, offering only an oblique reference to a single phrase directing prosecutors to focus on cases involving serious misconduct like bribery—as a necessary but not sufficient condition. The district court does not argue (nor could it) that the alleged conduct met any of the key Blanche Memorandum factors, such as conduct involving cartels, disadvantaging U.S. companies, or affecting U.S. national security.

Each of these reasons articulated by the government, among others, independently qualifies as "at least one uncontradicted or facially plausible reason" justifying dismissal under the district court's own standard. Br. 30.

For the reasons explained *supra*, the district court's denial of the government's unopposed Rule 48(a) motion conflicted with Article II and Article III of the Constitution. But even if it did not, none of the underlying

purposes for which a court may exercise supervisory power applies here. The government did not act illegally in filing an unopposed motion to dismiss with prejudice. Nor did the government violate defendants' rights in any way; to the contrary, the government sought to ensure that defendants did not continue to have criminal charges hanging over their heads that should not have been brought in the first place, and defendants readily agreed. The district court's extensive exercise of supervisory power here, on the other hand, has harmed the defendants and threatened the efficient and fair administration of justice. *See Wayte*, 470 U.S. at 607 (explaining that "subjecting the prosecutor's motives and decisionmaking to outside inquiry" "threatens to chill law enforcement" and "may undermine prosecutorial effectiveness by revealing the Government's enforcement policy").

Notwithstanding that, the government made a charging decision as part of its Department-wide interpretation of its own enforcement priorities, and provided the district court with the judicially-vindicated "real reasons" for the "decision to dismiss the Indictment." Doc. 49 at 22. Even under the most expansive interpretations of judicial supervisory power, the district court's decision to deny the government's motion to dismiss cannot pass muster.

## B. The District Court's Objections to Mandamus Relief Lack Merit.

To dissuade this Court from granting mandamus relief, the district court minimizes (Br. 22) the government's concerns with the constitutionality of the court's decision and attempts to reframe its denial of the Rule 48(a) motion as somehow not foreclosing the relief that the government sought. Those efforts fail at every turn.

To start, the district court's contention (Br. 22-23) that mandamus is premature because it "could still grant the [Rule 48(a)] motion" is unpersuasive. The court already denied the unopposed motion with respect to Counts One and Five. Doc. 57 at 14. Although the court indicated that it may grant another Rule 48(a) motion if the government prepares "expert reports" or submits even more evidence concerning its exercise of prosecutorial discretion, *id.* at 9 n.11, 14, that suggestion merely underscores the need for mandamus relief—especially after months of protracted and extensive filings between the district court, the government, and the defendants on this issue.

To briefly reiterate the timeline of events, the government filed its consent motion to dismiss on May 18, 2026. Doc. 23. Over the next four months, the district court directed the government and defense counsel to provide increasingly detailed information—orders with which the government complied. The district court ultimately partially granted the government's motion to dismiss on August

10, 2026, concluding that (1) "McCotter was, in fact, the 'sole decisionmaker' with regard to the requested dismissal," (2) "Defendant Gautam Adani's $10 billion investment promise was, in fact, a 'non-consideration,'" and (3) "the reasons for dismissal enumerated on pages 6-9 of McCotter's letter *are the real reasons for his decision to dismiss the Indictment*." Doc. 49 at 22 (emphasis added). Despite the government's thorough disclosure of its reasoning and the district court's decisive conclusions on their validity and veracity, the district court nonetheless demanded further factual bases for dismissal. Doc. 49 at 46. On September 3, 2026, the district court reached the point of near-absurdity by denying the motion to dismiss despite (1) an under-oath filing by the second-in-command at the Department explaining the bases for dismissal and (2) the court's own acknowledgement that these bases were the actual reasons for seeking dismissal. Doc. 57.

As shown by this sequence of events, the government repeatedly worked to comply with the district court's numerous requests with numerous filings over a period of four months. Notwithstanding this, the court's continued and extensive efforts to probe and second-guess the government's decision-making confirm that a serious intrusion of Executive Branch prerogatives has occurred and is ongoing, and that the government has no other means of obtaining the relief it seeks: the dismissal of Counts One and Five without unreasonably

having to hire experts to write reports on the government's own enforcement priorities, disclosing yet more privileged information, and/or responding to other still-unanticipated orders for information by the district court.

The cases that the district court relies on (Pet. 22-23) to assert that mandamus is premature are inapposite. In those cases, appellate courts denied mandamus relief because lower courts had not yet ruled on the underlying motions. *See In re Flynn*, 973 F.3d 74, 77-79 (D.C. Cir. 2020) (per curiam) (declining to issue a writ "to compel a district court to decide an *undecided* motion [to dismiss pursuant to Rule 48(a)] *in a particular way*"); *In re Richards*, 213 F.3d 773, 777 (3d Cir. 2000) ("In this case, the Territorial Court did not deny the motion to dismiss but merely scheduled a hearing."); *Philip Morris Inc. v. National Asbestos Workers Med. Fund*, 214 F.3d 132, 134-35 (2d Cir. 2000) (per curiam) (declining to issue a writ where the district court "repeated[ly] refus[ed] … to decide whether to certify plaintiffs' class" and the Court was "confident that the district court w[ould] promptly … decide the issue"). In fact, in *Flynn*, the D.C. Circuit specifically determined that a mandamus petition was premature because the petitioner could later seek relief through "a fresh petition for mandamus" if the district court ultimately denied the government's unopposed Rule 48(a) motion. 973 F.3d at 79.

Here, the district court has already denied the government's Rule 48(a) motion after months of filings. The court's suggestion (Br. 22) that the government is simply being "impatien[t]" with the court's process thus mischaracterizes the grave problems with its ruling. The government is not trying to prevent the court from "finish[ing]" any legitimate "work" (Br. 29); it is seeking relief from the court's improper denial of the government's unopposed motion to dismiss and its continuing attempts to pry loose privileged information as part of an ongoing effort to improperly superintend the Executive's prosecutorial decision-making.

Finally, and contrary to the district court's suggestion (Br. 26, 29), its ruling is causing ongoing harm in at least two ways. First, the court has unnecessarily placed the government in the position of having to decide between proceeding on charges it does not wish to pursue or disclosing additional privileged information about why pursuing those charges is inconsistent with the Department's enforcement priorities and other strategic considerations. Second, it has left multiple criminal defendants in the lurch. While the court downplays (Br. 29) the harm its decision is causing these defendants, there can be no dispute that the continuation of a criminal prosecution "may seriously interfere with [a] defendant's liberty, … disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and

create anxiety in him, his family and his friends." *United States v. Marion*, 404 U.S. 307, 320 (1971). Although such harms do not justify mandamus relief in a typical case, *Parr v. United States*, 351 U.S. 513, 519-21 (1956), they may justify such relief where, as here, a district court unnecessarily prolongs those harms over the objection of both the prosecution and the defense. That is precisely the sort of "extraordinary" situation involving "a judicial usurpation of power" that mandamus relief is designed to redress. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004) (quotation marks omitted) (explaining that issuance of the writ is appropriate to "restrain a lower court when its actions would threaten the separation of powers" or when it "'intru[des]'" on sensitive matters).

## CONCLUSION

This Court should issue a writ of mandamus directing the district court to grant the government's motion under Rule 48(a) to dismiss the indictment with prejudice.

Respectfully submitted,

s/ Jared M. Beim

R. TRENT MCCOTTER
Acting Deputy Attorney General
JARED M. BEIM
Senior Counsel
United States Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Jared.Beim2@usdoj.gov
202-514-2105

## CERTIFICATE OF COMPLIANCE

1. This reply brief contains 4,936 words, excluding the cover page, table of contents, table of authorities, and certificates.

2. This reply brief has been prepared in proportionally spaced typeface using Microsoft Word in Calisto MT 14-point type.

s/ Jared M. Beim

## CERTIFICATE OF SERVICE

I hereby certify that, on November 10, 2026, I electronically filed the foregoing Reply Brief for the United States with the United States Court of Appeals for the Second Circuit using the CM/ECF system. In addition, a copy was served by Federal Express and by electronic mail (on counsel), as follows:

*Counsel for the Hon. Nicholas G. Garaufis*
Deirdre D. von Dornum
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, NY 10004
dvondornum@shertremonte.com

*Counsel for Saurabh Agarwal*
Winston M. Paes
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
wmpaes@debevoise.com

*Counsel for Cyril Cabanes*
Stephen A. Best
Brown Rudnick LLP
1900 N Street, NW, 4th Floor
Washington, DC 20036
sbest@brownrudnick.com

*Counsel for Rupesh Agarwal*
Andrew Adams
Steptoe LLP
1114 Avenue of the Americas
New York, NY 10036
acadams@steptoe.com

*Counsel for Deepak Malhotra*
Michael Kendall
White & Case LLP
75 State Street
Boston, MA 02109
michael.kendall@whitecase.com

*Counsel for Ranjit Gupta*
Paul H. Schoeman
Herbert Smith Freehills Kramer (US) LLP
1177 Avenue of the Americas
New York, NY 10036
paul.schoeman@hsfkramer.com

**DATED:** NOVEMBER 10, 2026

s/ Jared M. Beim